## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| CAROLYN S. SEARLES, | ) | Case No. 3:23-CV-02394-CEF |
| | ) | |
| Petitioner, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | UNITED STATE DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN TERI BALDAUF, | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| Respondent. | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    INTRODUCTION

Petitioner, Carolyn S. Searles ("Ms. Searles"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Ms. Searles is serving a sentence of nine years in prison after pleading guilty to two counts of tampering with records, one count of complicity in the commission of an offense, and one count of engaging in a pattern of corrupt activity.

Ms. Searles asserts eight grounds for relief. Respondent, Warden Teri Baldauf ("Warden"), filed an answer/return of writ on April 12, 2024. (ECF No. 8). Ms. Searles filed a response to the Warden's return of writ on May 17, 2024. (ECF No. 9). This matter was referred to me on February 1, 2024 under Local Rule 72.2 to prepare a report and recommendation on Ms. Searles' petition. (*See* ECF non-document entry dated February 1, 2024). For the reasons set forth below, I recommend that Ms. Searles' petition be DISMISSED and/or DENIED. I further recommend that this Court not grant Ms. Searles a certificate of appealability.

1

## II.    RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Third Appellate District summarized the facts as follows:

> {¶2} On April 4, 2019, the Van Wert County Grand Jury indicted Searles on eight counts of tampering with records in violation of R.C. 2913.42(A)(2) and (B), felonies of the third degree; one count of complicity in the commission of an offense in violation of R.C. 2923.03(A)(2) and (F), a felony of the third degree; one count of obstructing justice in violation of R.C. 2921.32(A)(5) and (C)(3), a felony of the fifth degree; and one count of engaging in a pattern of corrupt activity in violation of R.C. 2923(A)(3) and (B)(1), a felony of the first degree. Doc. 2. These offenses all arose out of Searles' husband and Searles using her nephew's identity for various purposes for more than a decade. . . .

(ECF No. 8-1, Exhibit 11); *State v. Searles*, No. 15-19-05, 2020 WL 1244805, 2020-Ohio-973 (3rd Dist. Mar. 16, 2020).

## III.    PROCEDURAL HISTORY

### A.    <u>State Court Conviction</u>

On April 4, 2019, Ms. Searles was indicted in the Van Wert County Court of Common Pleas on the following offenses: (1) eight third-degree felony counts of tampering with records in violation of O.R.C. §§ 2913.42(A)(2) and (B)(4); (2) one third-degree felony count of complicity in the commission of an offense in violation of O.R.C. §§ 2923.03(A)(2) and (F); (3) one fifth-degree felony count of obstructing justice in violation of O.R.C. §§ 2921.32(A)(5) and (C)(3); and (4) one first-degree felony count of engaging in a pattern of corrupt activity in violation of O.R.C. §§ 2923.32(A)(3) and (B)(1). (ECF No. 8-1, Exhibit

2

1). On April 10, 2019, Ms. Searles pled not guilty to all charges. (ECF No. 8-1, Exhibit 2).

On June 4, 2019, Ms. Searles withdrew her plea of not guilty and pled guilty to two counts of tampering with records (Counts One and Five), one count of complicity in the commission of an offense (Count Nine), and one count of engaging in a pattern of corrupt activity (Count Eleven). (ECF No. 8-1, Exhibit 3). Ms. Searles also agreed to the forfeiture of her house. *Id*. In return, the State agreed to dismiss the remaining counts. *Id*. On July 12, 2019, the trial court sentenced Ms. Searles to an aggregate term of nine years in prison. (ECF No. 8-1, Exhibit 5). On July 16, 2019, the trial court entered a *nunc pro tunc* sentencing entry, which did not alter Ms. Searles' aggregate prison sentence. (ECF No. 8-1, Exhibit 7).

**B.  Direct Appeal**

On August 12, 2019, Ms. Searles, through new appellate counsel, timely filed a notice of appeal to the Third Appellate District. (ECF No. 8-1, Exhibit 8). On December 9, 2019, Ms. Searles filed her appellate brief, raising the following assignment of error:

> 1.  The Trial Court Committed Prejudicial Error By Imposing a Sentence That is Contrary To Law.

(ECF 8-1, Exhibit 9).

On March 16, 2020, the Third Appellate District affirmed the trial court's judgment. (ECF No. 8-1, Exhibit 11). Ms. Searles did not appeal the Third Appellate District's decision to the Ohio Supreme Court at that time.

**C.  Motion to Withdraw Guilty Plea and Petition for Post-Conviction Relief**

On August 12, 2020, Ms. Searles, acting *pro se*, filed a petition in the trial court to withdraw her guilty plea pursuant to Ohio Criminal Rule 32.1, arguing that she received the

ineffective assistance of trial counsel in connection with her plea. (ECF No. 8-1, Exhibit 15).[1] On the same day, Ms. Searles, again acting *pro se*, filed a petition in the trial court to vacate or set aside her conviction pursuant to O.R.C. § 2953.21, again arguing that she received the ineffective assistance of trial counsel. (ECF No. 8-1, Exhibit 16). The trial court appointed counsel, who filed a supplemental memorandum in support of both the motion to withdraw Ms. Searles' guilty plea and the petition to vacate. (ECF No. 8-1, Exhibit 18). In the supplemental memorandum, Ms. Searles' appointed counsel focused on the argument that the indictment was defective with respect to the pattern of corrupt activity count because it alleged that Ms. Searles used the proceeds from corrupt activity to purchase real property in 2009 but did not allege any specific predicate acts of identity theft occurring before 2012.

On March 8, 2021, the trial court dismissed Ms. Searles' motion and petition. (ECF No. 8-1, Exhibit 20). The court held that it was lacked jurisdiction over Ms. Searles' motion to withdraw her guilty plea because the Third Appellate District had already affirmed her sentence on appeal. The court also held that Ms. Searles' petition to vacate or set aside her conviction was barred by the doctrine of res judicata because she could have raised the ineffectiveness of her counsel on direct appeal. The court further held that Ms. Searles' claims would fail even without the application of res judicata.

On September 20, 2021, Ms. Searles, acting *pro se*, filed a motion for leave to file a delayed appeal in the Third Appellate District. (ECF No. 8-1, Exhibit 21). On September 29, 2021, the Third Appellate District denied Ms. Searles' motion, holding it was not properly filed and that a delayed appeal was not an available remedy. (ECF No. 8-1, Exhibit 22).

---

[1] On May 18, 2020, Ms. Searles, acting pro se, filed a motion in the trial court for judicial release pursuant to O.R.C. § 2929.20(B) in light of the COVID-19 pandemic. (ECF No. 8-1, Exhibit 13). On May 20, 2020, the trial court denied the motion. (ECF No. 8-1, Exhibit 14).

**D.  <u>Rule 26(B) Application to Reopen Appeal</u>**

On March 10, 2022, Ms. Searles, acting *pro se*, filed a delayed application in the Third Appellate District to reopen her appeal pursuant to Ohio Appellate Rule 26(B). (ECF No. 8-1, Exhibit 23). In her application, Ms. Searles argued that she was denied the effective assistance of appellate counsel during her direct appeal because her counsel: (1) erroneously advised her that she could not raise an ineffective assistance of counsel claim until she filed a post-conviction petition; (2) failed to argue that her plea was not knowing and voluntary; (3) failed to argue that the police conducted an unlawful search and seizure; (4) failed to argue that her trial counsel misinformed the trial court regarding whether the victim was developmentally disabled; (5) failed to raise her trial counsel's failure to obtain a psychological evaluation of Ms. Searles; (6) failed to argue that trial counsel was ineffective in not challenging alleged errors in the presentence report; (7) failed to argue that trial counsel was ineffective in not challenging the adequacy of the indictment with respect to the pattern of corrupt activity charge; and (8) did not argue that trial counsel was ineffective in failing to obtain relevant documents and records. *Id*. Ms. Searles asserted that her application was untimely as a result of of the COVID-19 pandemic and because she erroneously believed she could pursue her ineffective assistance of trial counsel arguments through her post-conviction petition. On April 13, 2022, Ms. Searles filed a supplemental memorandum in support of her petition. (ECF No. 8-1, Exhibit 24).

On May 6, 2022, the Third Appellate District denied Ms. Searles' application to reopen, holding that it was untimely and that Ms. Searles had not shown good cause for filing it after the due date. (ECF No. 8-1, Exhibit 26). Ms. Searles filed a motion for reconsideration, which the court denied on July 5, 2022. (ECF No. 8-1, Exhibits 28-29).

**E.  Motion for Leave to File Delayed Appeal to Ohio Supreme Court**

On September 6, 2022, Ms. Searles, acting *pro se*, filed a notice of appeal to the Ohio

Supreme Court from the Third Appellate District's March 16, 2020 decision affirming the

trial court's judgment on direct appeal. (ECF No. 8-1, Exhibit 30). Ms. Searles also filed a

motion for leave to file a delayed appeal in light of the COVID-19 pandemic, which the Ohio

Supreme Court granted on September 19, 2022. (ECF No. 9-1, Exhibits 31-32). On September

27, 2022, Ms. Searles filed her memorandum in support of jurisdiction, raising the following

propositions of law:

1.  The Sixth Amendment guarantees an accused will have the effective assistance
    of counsel. The Sixth Amendment recognizes this right as it envisions defense
    counsel playing a role that is critical to the ability of the adversarial system to
    produce just results.

2.  The Fourth Amendment guarantees the right of the people to be secure in their
    persons, houses, papers, and effects, against unreasonable searches and seizures,
    shall not be violated, and NO Warrants shall issue, but upon probable cause,
    supported by Oath or affirmation, and particularly describing the place to be
    searched, and the persons or things to be seized.

(ECF No. 8-1, Exhibit 33). On December 27, 2022, the Ohio Supreme Court declined

to accept jurisdiction over the appeal. (ECF No. 8-1, Exhibit 35).

**F.  Federal Habeas Action**

On or about December 11, 2023, Ms. Searles, acting *pro se*, filed her 28 U.S.C. § 2254

habeas petition. (ECF No. 1).[2] Ms. Searles' habeas petition raises the following grounds for

relief:[3]

---

[2] A *pro se* petitioner's petition is deemed filed on the date in which the petitioner presents the petition to prison
officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). While Ms. Searles signed her petition on
December 11, 2023, the petition does not indicate the date on which she presented it to prison officials for
mailing. (ECF No. 1, PageID # 23). Because the Warden does not argue that Ms. Searles' petition is untimely,
the precise date on which she filed it is not relevant to the issues before the Court.
[3] Ms. Searles' grounds for relief are reproduced verbatim.

1. The Sixth Amendment guarantees an accused will have Effective Assistance of counsel. Appellant Counsel did not raise the claim that the plea was "unknowing and involuntary."

2. Appellant counsel was ineffective when he erred in his advising Appellant that she could only raise ineffective assistance of counsel at Post Conviction, when he should have known it would then be barred.

3. Appellate Counsel was ineffective for not presenting the claim that there was a probability of Illegal Search & Seizure.

4. Appellate Counsel was ineffective for not raising the claim that Trial Counsel was ineffective when he MISREPRESENTED IN COURT on record the mental condition of the victim.

5. Appellate Counsel was ineffective for not raising the claim that Trial Counsel was ineffective for not having the Appellant evaluated by psychologists or Mental Health Professionals.

6. Appellate Counsel was ineffective for not raising the claim that Trial Counsel was ineffective for not defending the errors in the PSI investigation.

7. Appellate Counsel was ineffective for not presenting the claim that Trial Counsel was ineffective for not defending the dates alleged for the Pattern of Corrupt Activity charge 2923.32(A)(3).

8. Appellate Counsel was ineffective for not presenting that Trial Counsel was ineffective for not obtaining any necessary documents or records from the Van Wert Court House (Auditor's Office) or to subpoena any documents needed from the Appellant's insurance companies as needed to provide a defense for the Appellant as any competent and effective counsel would have done.

*Id*.

The Warden filed an answer/return of writ on April 12, 2024. (ECF No. 8). Ms. Searles filed a response on May 17, 2024. (ECF No. 9).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of

7

the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Van Wert County Court of Common Pleas sentenced Ms. Searles, and the Court takes judicial notice that Van Wert County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Ms. Searles' § 2254 petition.

**B.  Exhaustion and Procedural Default**

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies

were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every state of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

**C.  Cognizable Federal Claim**

Under 28 U.S.C. § 2254(a), a state prisoner may challenge her custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province

9

of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D. **AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to

play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing

11

the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V. ANALYSIS

Ms. Searles asserts eight grounds for relief. The Warden responds that Ms. Searles' petition should be dismissed in its entirety because she has procedurally defaulted on all of her claims. The Warden alternatively argues that all of Ms. Searles' claims fail on the merits. I agree with the Warden on both arguments.

### A. Procedural Default

As noted above, procedural default occurs where a prisoner fails to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See Wainwright*, 433 U.S. at 80, 84-87; *Engle*, 456 U.S. at 125 n.28;

12

*Williams*, 460 F.3d at 806. The Warden argues that Ms. Searles procedurally defaulted on her claims because the Third Appellate District, the last court to issue a reasoned determination on the issue, dismissed them as untimely.

Each of Ms. Searles' eight grounds for relief asserts that she received the ineffective assistance of appellate counsel. "In Ohio, the vehicle for raising an ineffective assistance of appellate counsel claim is an application under Rule 26(B)." *Landrum v. Mitchell*, 625 F.3d 905, 934 (6th Cir. 2010). Ms. Searles filed a Rule 26(B) motion, in which she raised all of the arguments regarding her appellate counsel's alleged ineffectiveness that she seeks to assert here. However, the Third Appellate District dismissed Ms. Searles' petition, holding that it was untimely because she had not filed it within 90 days of its March 16, 2020 decision affirming the trial court judgment on direct appeal, as required under Ohio law. (ECF No. 8-1, Exhibit 26). The Third Appellate District also held that Ms. Searles had not demonstrated good cause for her failure to file a timely application. *Id*.

It is well-settled that "violation of the timeliness requirements of an application for reopening an appeal . . . constitute[s] [an] adequate and independent state ground[] to preclude hearing an untimely claim on the merits." *Baker v. Bradshaw*, 495 F. App'x 560, 565 (6th Cir. 2012); *see also Scuba v. Brigano*, 527 F.3d 479, 488 (6th Cir. 2007) (holding that filing deadline of Rule 26(B) constitutes a state procedural rule applicable to the petitioner's claim and that state court application of filing deadline results in procedural default under *Maupin*). Ms. Searles thus procedurally defaulted on her claims by failing to timely raise them through a Rule 26(B) application.

Ms. Searles' procedural default can be excused if she demonstrates either both cause for the default and actual prejudice or that the failure to consider her claims will result in a

fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Ms. Searles first argues that her procedural default should be excused because her appellate counsel erroneously advised her that her ineffective assistance of trial counsel claims needed to be raised through a post-conviction petition rather than through her direct appeal. However, Ms. Searles' default occurred when she failed to timely file her Rule 26(B) application, not when she raised her ineffective assistance of trial counsel claims through a post-conviction petition rather than on direct appeal. Even assuming that her appellate counsel did give her inaccurate advice regarding how to assert her ineffective assistance of trial claims, that advice cannot excuse her procedural default.

Ms. Searles also argues that she could not have known that she had an ineffective assistance of appellate counsel claim until the trial court dismissed her post-conviction petition in March 2021. However, it is well-settled that a prisoner's *pro se* status or ignorance of the law does not constitute "cause" to excuse a procedural default. *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) ("ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse [a] procedural default"); *see also Garcia v. Eppinger*, No. 1:17CV1090, 2020 WL 3037090, at *16 (N.D. Ohio May 11, 2020) ("a prisoner's pro se status and ignorance of the law do not constitute adequate cause to excuse a procedural default."), *report and recommendation adopted*, 2020 WL 3036028 (N.D. Ohio June 5 2020).

Ms. Searles next argues that the extraordinary nature of the COVID-19 pandemic constitutes cause to excuse the default. It is true that "[s]ome courts have found sufficient cause to excuse default when petitioners, who diligently pursued their rights, faced filing delays and limited access to law libraries due to the COVID-19 pandemic." *Black v. Warden,*

*Pickaway Corr. Inst*., No. 2:22-cv-3087, 2023 WL 8811032, at *19 (S.D. Ohio Dec. 20, 2023), *report and recommendation adopted*, 2024 WL 1735073 (S.D. Ohio Apr. 23, 2024). However, "[t]o satisfy cause to excuse procedural default, a petitioner must offer, with specificity, how the COVID-19 pandemic and any related restrictions hindered his ability to timely-file in state court." *Id*.

Ms. Searles has not provided specific information establishing that the COVID-19 pandemic prevented her from timely filing her Rule 26(B) application. She argues that prisoners had no access to the public defender or the law library during the pandemic. (ECF No. 9, PageID # 571). But "[c]onclusory and general allegations regarding . . . the lack of legal assistance . . . are simply insufficient" to demonstrate that the pandemic prevented a timely filing. *Sessoms v. Howard*, No. 2:24-CV-11275, 2024 WL 3448462, at *5 (E.D. Mich. July 17, 2024) (holding that pandemic did not constitute cause to excuse petitioner's failure to comply with AEDPA statute of limitations where petitioner failed to provide specific allegations regarding how pandemic prevented timely filing). Notably, Ms. Searles filed her motion to vacate her guilty plea and her post-conviction petition in August 2020, while the pandemic was ongoing. She does not explain why she was able to prepare those filings notwithstanding the pandemic but was unable to file her Rule 26(B) application until almost two years later.

Ms. Searles further argues that the Ohio Supreme Court's order granting her leave to file a delayed appeal demonstrates that the pandemic prevented her from timely filing her Rule 26(B) application in the Third Appellate District. However, the question is not whether Ms. Searles has established cause for purposes of Ohio's rules governing delayed appeals, but rather whether she has established cause under AEDPA. Ms. Searles does not cite any

cases for the proposition that the Ohio Supreme Court's ruling is dispositive of the federal procedural default analysis. I therefore conclude that the COVID-19 pandemic does not constitute cause that excuses Ms. Searles' procedural default.

Ms. Searles' procedural default can also be excused if she presents new, reliable evidence showing that she is "actually innocent" of the charged offense. *Schlup*, 513 U.S. at 324. Ms. Searles asserts at various points that she is innocent of the pattern of corrupt activity charge. Construing her petition broadly, I will assume that she is arguing that the actual innocence exception applies and excuses her procedural default.

To fall within *Schlup*'s actual innocence exception, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted [her] in light of the new evidence." *Id*, at 327. Notably, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "The Court [has] counseled . . . that the actual innocence exception should 'remain rare' and 'only be applied in the 'extraordinary case.'" *Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (quoting *Schlup*, 513 U.S. at 321).

Ms. Searles' actual innocence arguments relate only to the charge of engaging in a pattern of corrupt activity under O.R.C. §§ 2923.32(A)(3). Section 2923.32(A)(3) provides that an individual who "knowingly has received any proceeds derived, directly or indirectly, from a pattern of corrupt activity" shall not "use or invest, directly or indirectly, any part of those proceeds . . . in the acquisition of any title to, or any right, interest, or equity in, real property . . . " The indictment alleged that Ms. Searles violated Section 2923.32(A)(3) because she received the proceeds from identity theft and used it to purchase real property between May 1, 2009 and February 20, 2019. (ECF No. 8-1, Exhibit 1).

Ms. Searles argues that she is innocent of the pattern of corrupt activity offense for two reasons. First, as set forth in ground seven of her petition, she argues that the indictment fails to substantiate an offense under Section 2923.32(A)(3) because she acquired the real property at issue—a house—in August 2009, while the indictment does not allege any underlying predicate act of identity theft until 2012. Ms. Searles argues that she cannot have used the proceeds from identity theft in 2009 when the State did not allege any specific predicate acts of identity theft until years later. However, the indictment alleges that Ms. Searles obtained proceeds from a pattern of corrupt activity beginning in May 2009, before she acquired the property at issue. To the extent Ms. Searles is arguing that the State needed to allege a specific predicate act predating the acquisition, her argument constitutes a challenge to the legal sufficiency of the indictment rather than an assertion of factual innocence, and thus cannot serve as the basis for an actual innocence claim under *Schlup*. *See Bousley*, 523 U.S. at 623.

Ms. Searles also argues that she is actually innocent because she paid for the real property with the proceeds she received from an insurance claim rather than from identity theft. To support her argument, Ms. Searles has submitted various documents, including the purchase agreement showing that the house was purchased in the victim's name in August 2009, as well as documents showing that she received insurance payments totaling $15,000 shortly before the property was purchased. (ECF Nos. 1-17, 1-19).

While this argument arguably raises a factual innocence challenge, Ms. Searles has not established that no reasonable juror would have convicted her of engaging in a pattern of corrupt activity in light of this evidence. In particular, Ms. Searles has no direct evidence that the money from the insurance payment went to pay for the house. To the contrary, she has

17

submitted a letter from the Van Wert County auditor's office stating that they have no records regarding who paid for the house or how it was paid for. (ECF No. 1-16). While Ms. Searles argues that the timing shows that she did not buy the house with the proceeds from identity theft, her argument is just that: an argument. Given the evidence that Ms. Searles has presented, I cannot say that no reasonable juror could have concluded that she did, in fact, use the proceeds from the pattern of corrupt activities to acquire real property in violation of O.R.C. § 2923.32(A)(3). I therefore recommend that the Court dismiss Ms. Searles' petition in its entirety because she has procedurally defaulted on all of her claims.

### B. **Merits**

Alternatively, I recommend that the Court deny Ms. Searles' claims on the merits because she has not established that she received the ineffective assistance of appellate counsel or that any alleged ineffectiveness prejudiced her.

The right to effective assistance of counsel extends through the first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). Under the first prong, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The *Strickland* standard is "extremely deferential." *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017). "[T]he goal is not to ensure that a criminal defendant be afforded perfect

counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision.'" *Id*. (quoting *Strickland*, 466 U.S. at 687).

Ms. Searles argues that her appellate counsel was ineffective in failing to challenge whether her plea was knowing and voluntary. She also argues that her appellate counsel was ineffective because he erroneously advised her that she needed to raise her ineffective assistance of trial counsel arguments through a post-conviction petition rather than in her direct appeal. Finally, she argues that her appellate counsel was ineffective in failing to raise a number of other arguments on appeal. I agree with the Warden that Ms. Searles' arguments are without merit.

### 1. *Ground One: Voluntariness of Plea*

In her first ground for relief, Ms. Searles alleges that her appellate counsel was ineffective for failing to argue that her plea was not knowing and voluntary. Specifically, she argues that appellate counsel should have argued her plea was involuntary because: (1) she did not understand the factual basis for the pattern of corrupt activity charge; (2) she was suffering from mental health issues as a result of the death of her son; and (3) her trial counsel led her to believe she would receive a sentence of community confinement rather than prison.

A petitioner arguing that appellate counsel was ineffective in failing to a raise a particular argument faces a heavy burden. It is well-settled that "the *Strickland* performance standard does not require an attorney to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Indeed, winnowing out weaker arguments "far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S.

527, 536 (1986). Thus, to show that appellate counsel was ineffective in raising one argument over another, "the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver*, 349 F.3d at 348 (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)). Ms. Searles has not shown that the argument that her plea was involuntary was clearly stronger than the challenge to her sentence that appellate counsel did raise.

"[G]uilty pleas 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). The validity of the plea must be determined from the "totality of the circumstances surrounding the plea." *Abdus-Samad v. Bell*, 420 F.3d 614, 631 (6th Cir. 2005) (citing *Brady*, 397 U.S. 747).

When a habeas petitioner challenges the validity of her plea, "the state generally satisfies its burden [to show that the plea was voluntary and intelligent] by producing a transcript of the state court proceeding," *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The state court's factual finding that the plea was proper is accorded a presumption of correctness unless the transcript is inadequate to show that the plea was voluntary and intelligent. *Id*. at 326-327; *see* U.S.C. § 2254 (e)(1).

The Warden has filed a transcript of the plea hearing. The transcript reflects that Ms. Searles expressly informed the trial court that she had read and understood the charges against her and the maximum sentence that she could face as a result of pleading guilty. (ECF No. 8-2, PageID # 515-19). Ms. Searles also confirmed that she understood the constitutional rights she was waiving as a result of her guilty plea. (ECF No. 8-2, PageID # 519-21). Ms. Searles

20

further stated that she had discussed the evidence provided by the State with her attorney and that she was satisfied with the advice she received from her attorney. (ECF No. 8-2, PageID # 523-24). The transcript also reflects that Ms. Searles informed the trial court that she was experiencing certain physical issues but that her mental health was okay. (ECF No. 8-2, PageID # 528).

In light Ms. Searles' statements during the plea hearing, it was not an unreasonable exercise of appellate counsel's professional judgment to forego an argument that Ms. Searles' plea was unknowing and involuntary. Moreover, while Ms. Searles asserts that her trial counsel told her she would likely receive probation, "[u]nfulfilled subjective expectations of counsel and a defendant regarding the possible length of sentence do not render an otherwise valid plea involuntary." *United States v. Ford*, 15 F. App'x 303, 308 (6th Cir. 2001); *see also Lee v. United States*, No. 2:12-cv-327, 2013 WL 3724876, at *18 (S.D. Ohio Jul 15, 2013) (holding that plea was not involuntary despite counsel's inaccurate prediction regarding sentence length), *report and recommendation adopted*, 2013 WL 2090580 (S.D. Ohio May 19, 2014). I therefore alternatively recommend that the Court deny Ms. Searles' first ground for relief on the merits.

### 2. Ground Two: Inaccurate Advice Regarding Ineffective Assistance of Trial Counsel Claims

In her second round for relief, Ms. Searles asserts that her appellate counsel was ineffective because he incorrectly told her that she needed to raise her ineffective assistance of trial counsel claims through a post-conviction petition rather than through her direct appeal. Ms. Searles argues that her counsel's erroneous advice resulted in the trial court denying her post-conviction petition on res judicata grounds and prevented her from obtaining consideration of the merits of her claims.

21

Ohio's res judicata rule "prevents postconviction relief on 'any defense or any claimed lack of due process that was raised or could have been raised by the defendant at trial, which resulted in that judgment or conviction, or on an appeal from that judgment.'" *Wogenstahl v. Mitchell*, 668 F.3d 307, 341 (6th Cir. 2012) (quoting *State v. Cole*, 2 Ohio St. 3d 112, 113 (1982)) (emphasis omitted). "All claims, including ineffective-assistance-of-trial-counsel claims, must be raised on direct appeal." *Jones v. Bradshaw*, 46 F.4th 459, 485 (6th Cir. 2022). "Only claims involving evidence outside the trial record (sometimes referred to as evidence '*dehors'* the record) may be first raised in a petition for state post-conviction relief." *Id*.

Ms. Searles argues that her appellate counsel erroneously advised her that her ineffective assistance of trial counsel claims needed to be raised in a postconviction petition rather than on direct appeal. It is not clear whether the advice from Ms. Searles' appellate counsel was entirely incorrect with respect to all of Ms. Searles' claims. It is undoubtedly true that the trial court dismissed Ms. Searles' postconviction petition because it concluded that Ms. Searles' claims were barred by res judicata. However, Ms. Searles' primary argument in her postconviction petition was that her trial counsel was ineffective in failing to challenge the dates of the predicate acts with respect to the pattern of corrupt activity charge, a claim that corresponds to her seventh ground for relief in her petition. (ECF No. 8-1, Exhibit 18). The trial court's order was brief, and it is unclear whether and to what extent the trial court was holding that Ms. Searles' other grounds for relief were also barred by res judicata. Nonetheless, assuming that Ms. Searles has accurately reported what her appellate counsel advised her, she appears to have alleged that her counsel told her to raise in a postconviction petition at least one claim that the Ohio courts subsequently determined should have been

raised in her direct appeal.

I need not decide whether appellate counsel's erroneous advice fell below an objective standard of reasonableness because, even if it did, Ms. Searles has not shown that she suffered any prejudice. *See Strickland*, 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"). As discussed in connection with Ms. Searles' other grounds for relief, each of the arguments that she alleges she was prevented from raising is without merit, either because Ms. Searles waived her constitutional challenges, or because she has not shown a reasonable probability that the result of the proceeding would have been different had she been able to present those arguments. Because Ms. Searles cannot demonstrate prejudice, her claim fails. *See Strickland*, 466 U.S. at 692. I therefore alternatively recommend that the Court deny Ms. Searles' second ground for relief on the merits.

### 3. *Grounds Three Through Eight: Failure to Raise Ineffective Assistance of Trial Counsel Arguments*

Finally, in grounds three through eight, Ms. Searles argues that her appellate counsel was ineffective in failing to raise a number of arguments regarding her trial counsel's alleged ineffectiveness, including that: (1) trial counsel failed to argue that the police conducted an unlawful search and seizure; (2) trial counsel misinformed the trial court regarding whether the victim of the identity theft was developmentally disabled; (3) trial counsel was ineffective in not obtaining a psychological evaluation; (4) trial counsel was ineffective in not challenging alleged errors in the presentence report; (5) trial counsel was ineffective in not challenging the alleged predicate offenses for the pattern of corrupt activity charge; and (6) trial counsel was ineffective in failing to obtain relevant documents and records that Ms.

23

Searles asserts would have disproven the State's allegations. As with her first ground for relief, Ms. Searles has failed to demonstrate that any of these arguments are stronger than the argument her appellate counsel did raise.

As an initial matter, the Warden correctly argues that Ms. Searles waived several of her claims by entering an unconditional guilty plea. "Generally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'" *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012) (quoting *United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008). This is so because:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

> *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Therefore, "after the entry of an unconditional plea, a defendant may only attack the court's jurisdiction and the voluntary and intelligent character of the plea itself." *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012). The same is true under Ohio law. *See Brown v. McConahay*, No. 1:23-cv-753, 2023 WL 9556586, at *13 (N.D. Ohio Dec. 18, 2023) ("As recognized by the Ohio Court of Appeals, Brown waived his ineffective assistance of counsel claim under Ohio law when he entered his guilty plea."), *report and recommendation adopted*, 2024 WL 177116 (N.D. Ohio Jan. 17, 2024).

As the Warden correctly notes, at least three of Ms. Searles' ineffective assistance of counsel claims relate to alleged constitutional deprivations that occurred prior to the plea: (1) ground three, which asserts that trial counsel was ineffective in failing to challenge an allegedly unlawful search and seizure; (2) ground seven, which alleges that trial counsel was ineffective in failing to argue that the dates alleged for certain predicate acts alleged in the

indictment disproved the pattern of corrupt activity charge; and (3) ground eight, which challenges trial counsel's failure to subpoena documents. Because Ms. Searles' guilty plea waived those claims, her appellate counsel was not ineffective in failing to raise them on appeal. *See McConahay*, 2023 WL 9556586 at *14 (holding that petitioner "cannot demonstrate that his appellate counsel was ineffective or objectively unreasonable for failing to raise a waived claim on direct appeal").

In addition, as the Warden notes, Ms. Searles' remaining claims are based on arguments that did not appear in the trial court record and thus could not be raised on direct appeal. In her fourth ground for relief, Ms. Searles argues that her trial counsel misrepresented whether the victim was disabled, relying on external evidence that the victim graduated from high school and was denied social security benefits because his IQ was above 70. In ground five, Ms. Searles asserts that trial counsel should have obtained a psychological evaluation for her because she was experiencing mental health issues due to the recent death of her son. Documentation of those alleged issues does not appear in the trial court record. Rather, as noted above, Ms. Searles said during the plea hearing that her mental status was not impaired. (ECF No. 8-2, PageID # 528). Finally, in ground six, Ms. Searles asserts that there are errors in the presentence report, again relying on documents and evidence not presented to the trial court.

Because each of these arguments relied on evidence *dehors* the record, Ms. Searles' appellate counsel could not have successfully raised them in her direct appeal under Ohio law. *See*, *e.g.*, *Young v. Turner*, No. 1:15-cv-637, 2016 WL 6216543, at *2 (S.D. Ohio Oct. 25, 2016) (noting that pre-sentence reports are confidential under Ohio law and are not part of record on appeal, such that ineffective assistance of counsel claim based on pre-sentence

25

report could not be raised on direct appeal), *report and recommendation adopted*, 2020 WL 7040644 (S.D. Ohio Dec. 1, 2020); *Simpson v. Warden, Lebanon Corr. Inst*., No. 3:17-cv-300, 2018 WL 1315018, at *3 (S.D. Ohio Mar. 14, 2018) (holding that because claim that counsel was ineffective in failing to investigate petitioner's mental status "necessarily depended on evidence outside the appellate record, it could not have been presented on direct appeal"), *report and recommendation adopted*, 2018 WL 3008340 (S.D. Ohio June 14, 2018).

The ineffective assistance of trial counsel claims that Ms. Searles asserts her appellate counsel should have raised thus were not clearly stronger than the argument that Ms. Searles' appellate counsel did raise, and I alternatively recommend that the Court deny Ms. Searles' third through eighth grounds for relief on the merits.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].”). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. Analysis

Ms. Searles has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## VII. RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the DISMISS and/or DENY Ms. Searles' petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend that the Court not grant her a certificate of appealability.

Dated:  February 11, 2025

*Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same

argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).