**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CAROLYN S. SEARLES, | ) | CASE NO. 3:23-cv-2394 |
| | ) | |
| Petitioner, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| WARDEN TERI BALDAUF, | ) | |
| | ) | **OPINION AND ORDER ADOPTING** |
| Respondent. | ) | **MAGISTRATE'S REPORT AND** |
| | ) | **RECOMMENDATION** |
| | ) | |

On December 15, 2023, Petitioner Carolyn Searles filed a *pro se* Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2254. (ECF No. 1). Subsequently, Respondent Warden Teri Baldauf filed a Return of Writ, (ECF No. 8), and Petitioner filed a traverse, (ECF No. 9). On February 11, 2025, Magistrate Judge Jennifer Dowdell Armstrong issued a Report and Recommendation ("R&R") recommending that the Court dismiss and/or deny the Petition. (ECF No. 12). Petitioner filed a Rule 59(e) motion to alter or amend (ECF No. 13), which the Court construes as objections to the R&R. Upon consideration of Petitioner's objections, and a *de novo* review of the portions of the record to which Petitioner has objected, the Court **ADOPTS** the R&R in its entirety and **DENIES** and **DISMISSES** the Petition.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Magistrate Judge Armstrong's R&R provides a thorough account of the events preceding the filings and R&R currently before the Court. The Court will only briefly summarize the relevant factual and procedural history.

1

### A. Trial Court Proceedings

In April 2019, a grand jury in the Van Wert County Court of Common Pleas indicted Petitioner on eleven counts: (i) eight counts of tampering with records, in violation of Ohio Rev. Code §§ 2913.42(A)(2) and (B)(4); (Counts 1 through 8); (ii) one count of complicity in the commission of an offense, in violation of Ohio Rev. Code §§ 2923.03(A)(2) and (F) (Count 9); (iii) one count of obstructing justice, in violation of Ohio Rev. Code §§ 2921.32(A)(5) and (C)(3) (Count 10); and (iv) one count of engaging in a pattern of corrupt activity, in violation of Ohio Rev. Code §§ 2923.32(A)(3) and (B)(1) (Count 11).  (ECF No. 8-1, PageID #174–77).  On July 12, 2019, Petitioner entered a plea of guilty to Counts 1, 5, 9, and 11, after which the trial court accepted the plea, adjudged Petitioner guilty of Counts 1, 5, 9, and 11, and sentenced her to an aggregate nine-year term of imprisonment to be followed by five years of post-release control.  (*Id.* at PageID #191–99).

### B. Direct Appeal

Petitioner, through counsel, filed a timely appeal to the Ohio Court of Appeals, raising one assignment of error: the trial court committed a prejudicial error by imposing a sentence that is contrary to law.  (*Id.* at PageID #206, 223, 225, 231–36).  On March 16, 2020, the Ohio Court of Appeals overruled the assignment of error and affirmed the trial court's judgment.  (*Id.* at PageID #285–93).  Petitioner did not file an appeal to the Ohio Supreme Court.

### C. Post-Conviction Filings in the Trial Court

On August 12, 2020, Petitioner, proceeding *pro se*, submitted two filings in the trial court: (i) a motion to withdraw her guilty plea pursuant to Ohio Criminal Rule 32.1, (*id.* at PageID #306–08); and (ii) a petition to vacate and set aside her conviction pursuant to Ohio Rev. Code § 2953.21, (*id.* at PageID #309–18).  In both filings, Petitioner argued that she received ineffective

assistance of trial counsel. (*Id.* at PageID #306–07, 310–13). On March 8, 2021, the trial court dismissed the motion to withdraw and petition to vacate, holding that: (i) it lacked jurisdiction over the motion to withdraw the guilty plea; (ii) the petition to vacate or set aside her sentence was barred by the doctrine of *res judicata*; and (iii) the petition to vacate would otherwise fail. (*Id.* at PageID #348–52).

Petitioner filed a *pro se* motion for leave to file a delayed appeal in the trial court on August 20, 2020. (*Id.* at PageID #353–57). On September 29, 2021, the trial court denied the motion for leave because it was not properly filed and a delayed appeal was not an available remedy. (*Id.* at PageID #360–61).

### D. Rule 26(B) Application to Reopen Appeal

On March 10, 2022, Petitioner filed a *pro se* Rule 26(B) application to reopen the appeal. (*Id.* at PageID #362–72). Petitioner raised eight assignments of error related to ineffective assistance of appellate counsel[1] and explained that her Rule 26(B) application to reopen was untimely because of the COVID-19 pandemic and appellate counsel informing her that she had to first file a "Post Conviction Appeal." (*Id.* at PageID #363–71). On May 6, 2022, the Ohio Court of Appeals denied the Rule 26(B) application, holding that it was untimely and Petitioner had not shown good cause for filing the application well after the 90-day deadline. (*Id.* at PageID #408–09). Petitioner filed a motion for reconsideration, which the Ohio Court of Appeals denied on July 5, 2022. (*Id.* at PageID #422–25).

### E. Delayed Appeal Motion

On September 6, 2022, Petitioner filed a notice of appeal in the Ohio Supreme Court, challenging the Ohio Court's Appeals' March 16, 2020 decision to affirm the trial court's

---

[1] These eight assignments of error are nearly identical to eight grounds for relief raised in the instant Petition. (*Compare* ECF No. 8-1, PageID #366–71, *with* ECF No. 1, PageID #5–19).

3

judgment, as well as a motion for leave to file a delayed appeal. (*Id.* at PageID #426–36).

Petitioner's memo in support of jurisdiction raised two propositions of law:

> Proposition of Law I: The Sixth Amendment guarantees an accused will have the effective assistance of counsel. The Sixth Amendment recognizes this right as it envisions defense counsel playing a role that is critical to the ability of the adversarial system to produce just results.
>
> Proposition of Law II: The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and NO Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

(*Id.* at PageID #465–70). The Ohio Supreme Court declined to accept jurisdiction over the appeal on December 27, 2022. (*Id.* at PageID #482).

### E. Instant Habeas Proceeding

Petitioner, still proceeding *pro se*, filed a § 2554 petition for writ of habeas corpus (the Petition) on December 15, 2023, raising eight grounds for relief:

> Ground One: The Sixth Amendment guarantees an accused will have Effective Assistance of counsel. Appellant Counsel did not raise the claim that the plea was "unknowing and involuntary."
>
> Ground Two: Appellant counsel was ineffective when he erred in his advising Appellant that she could only raise ineffective assistance of counsel at Post Conviction, when he should have known it would then be barred.
>
> Ground Three: Appellate Counsel was ineffective for not presenting the claim that there was a probability of Illegal Search & Seizure.
>
> Ground Four: Appellate Counsel was ineffective for not raising the claim that Trial Counsel was ineffective when he MISREPRESENTED IN COURT on record the mental condition of the victim.
>
> Ground Five: Appellate Counsel was ineffective for not raising the claim that Trial Counsel was ineffective for not having the Appellant evaluated by psychologists or Mental Health Professionals.
>
> Ground Six: Appellate Counsel was ineffective for not raising the claim that Trial Counsel was ineffective for not defending the errors in the PSI investigation.

> Ground Seven: Appellate Counsel was ineffective for not presenting the claim that Trial Counsel was ineffective for not defending the dates alleged for the Pattern of Corrupt Activity charge 2923.32(A)(3).
>
> Ground Eight: Appellate Counsel was ineffective for not presenting that Trial Counsel was ineffective for not obtaining any necessary documents or records from the Van Wert Court House (Auditor's Office) or to subpoena any documents needed from the Appellant's insurance companies as needed to provide a defense for the Appellant as any competent and effective counsel would have done.

(ECF No. 1, PageID #5–19). Magistrate Judge Armstrong recommended denying and dismissing the habeas petition. (ECF No. 12). She found that Petitioner had procedurally defaulted all her claims and recommended dismissal of the Petition on this ground. (*Id.* at PageID #722–28). Alternatively, she recommended denying the Petition on the merits. (*Id.* at PageID #728–36).

On March 17, 2025, Petitioner filed a motion to alter or amend that cited Fed. R. Civ. P. 59(e) and requested reconsideration of the R&R. (ECF No. 14). The Court construes this motion as raising timely objections to the R&R and will treat the filing as such.

## II.    LEGAL STANDARD

Under the Federal Magistrates Act, a district court must conduct a *de novo* review of those portions of the report and recommendation to which the parties have objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). Absent objection, a district court may adopt a report and recommendation without further review. *See Peretz v. United States*, 501 U.S. 923, 939 (1991); *Thomas v. Arn*, 474 U.S. 140, 141–42 (1985). Pursuant to Fed. R. Civ. Proc. 72(b)(3), a district judge:

> [M]ust determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

5

Fed. R. Civ. Proc. 72(b)(3). An objection must address specific issues within the magistrate judge's report and recommendation. *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). That means that a petitioner must direct "the district judge's attention to specific issues decided by the magistrate contrary to [the petitioner's] position." *Ayers v. Bradshaw*, No. 3:07-cv-2663, 2008 U.S. Dist. LEXIS 27218, 2008 WL 906100, at *2 (N.D. Ohio, Mar. 31, 2008) (quoting *Neuman v. Rivers*, 125 F.3d 315, 323 (6th Cir. 1997)); *see also Bulls v. Potter*, No. 5:16-cv-02095, 2020 U.S. Dist. LEXIS 30163, 2020 WL 870931, at *1 (N.D. Ohio Feb. 21, 2020) (providing that objections "must be specific in order to trigger the de novo review").

General objections are insufficient to meet the specificity requirement as objections "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006) (quoting *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)) (internal quotation marks omitted); *see also Howard*, 932 F.2d at 509 (providing that a general objection to a magistrate judge's report and recommendation "has the same effects as would a failure to object"). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context. *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004).

### III.  DISCUSSION

Petitioner's Rule 59(e) motion raises three specific objections to the R&R that the Court will address in turn. Petitioner raises two objections that concern the R&R's ruling that Petitioner's claims are all procedurally defaulted; namely, Petitioner argues that the procedural default should be excused because she demonstrated: (i) good cause for her late filings, (ECF No. 13, PageID #742–46); and (ii) actual innocence of the charged offenses, (*id.* at PageID #747–56). Petitioner

6

also raises one objection to Magistrate Judge Armstrong's conclusion that Petitioner waived many of the constitutional challenges that underlie her ineffective assistance of counsel claims by entering an unconditional guilty plea. (*Id.* at PageID #756–60).

### A. Objections – Procedural Default

Petitioner raises eight grounds for relief related to ineffective assistance of appellate counsel. (ECF No. 1, PageID #5–19). Magistrate Judge Armstrong concluded that Petitioner's claims were procedurally defaulted because she failed to raise them in a timely Rule 26(B) application. (ECF No. 12, PageID #722–23). She also concluded that the procedural default could not be excused because Petitioner had neither demonstrated good cause for the default nor a fundamental miscarriage of justice if her claims were not considered ("actual innocence"). (*Id.* at PageID #723–28). Petitioner concedes that her Rule 26(B) application was untimely. (ECF No. 13, PageID #742). However, she objects that the procedural default should be excused because there was excusable neglect for the default and she is actually innocent of the charged offense. (*Id.* at PageID #742–56). After *de novo* review of the record, the Court agrees with Magistrate Judge Armstrong's conclusion.

#### 1. *Good Cause/Excusable Neglect*

A habeas petitioner can overcome procedural default by showing either: (i) good cause for the default and resulting prejudice; or (ii) a fundamental miscarriage of justice because she is actually innocent (the "actual innocence" exception). *Lundgren v. Mitchell*, 440 F.3d 754, 763–64 (6th Cir. 2006); *Hernandez v. Haviland*, No. 23-3850, 2024 U.S. App. LEXIS 11660, at *4 (6th Cir. May 13, 2024) (citing *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). Under the first exception, habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or

7

argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted)). A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's *pro se* status nor her ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial court creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Murray*, 477 U.S. at 494. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577–78 (6th Cir. 2015).

The final judgment for Petitioner's direct appeal was entered on March 16, 2020. (ECF No. 8-1 at PageID #285–93). Petitioner therefore had 90 days to file a Rule 26(B) application, but she did not do so until March 10, 2022. (*Id.* at PageID #362); Ohio App. R. 26(B)(1) (providing a deadline of 90 days from journalization of the appellate judgment to apply to reopen an appeal). Petitioner argues that the restrictions she was subjected to during the COVID-19 pandemic constitute sufficient cause to excuse the default of her late-filed Rule 26(B) application. (ECF

8

No. 13, PageID #742–46). She primarily cites the conditions and restrictions she was placed under when she was moved to a Residential Treatment Unit ("RTU") as limiting her ability to file a timely application. (*Id.* at PageID # 743–46). The Court finds this argument unpersuasive for several reasons. This explanation is insufficient cause to excuse the default because, as stated by Petitioner, her placement in the RTU (and the associated restrictions) was only through the second week of August 2020. (*Id.* at PageID #745). Even if these alleged restrictions were generally considered sufficient to excuse a default of the original 90-day deadline, they would not constitute a sufficient excuse in this instance because Petitioner did not file her Rule 26(B) application until March 10, 2022—more than 18 months after her removal from the RTU. Petitioner's objections do not provide any explanation for *this* delay. The Ohio Court of Appeals previously considered Petitioner's arguments about COVID-19 and her placement in the RTU and rejected them as insufficient to show good cause for the untimely Rule 26(B) application. (*Id.* at PageID #408–09, 411–12).

Petitioner also mentions having limited access to the prison law library following her placement in the RTU, labeling it the most significant restriction. (*Id.* at PageID #745). But she does not contend that she was completely barred from using the library. Petitioner's filing of several motions/petitions in August 2020 and September 2021, (*Id.* at PageID #306, 309, 353), belies her argument that the prison restrictions were responsible for her late-filed Rule 26(B) application. The Court agrees with the conclusion of the Ohio Court of Appeals and Magistrate Judge Armstrong that Petitioner has failed to demonstrate sufficient cause to excuse the default.

    1.    *Actual Innocence*

A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."

9

*Murray*, 477 U.S. at 495–96; *see also Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial, that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324; *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) (citation omitted). In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327. This standard is demanding, rarely satisfied, and applied only in extraordinary cases. *Schlup*, 513 U.S. at 321; *Souter v. Jones*, 395 F.3d 577, 601 (6th Cir. 2005).

Petitioner does not identify or provide any new, reliable evidence of her actual innocence. Petitioner admits that she does not have specific bank documents or exhibits, but she provides a narrative explanation of what she considers the "true facts of the case" and why she did not engage in identity theft or a pattern of corrupt activity. (ECF No. 13, PageID #748–56). Petitioner states that evidence from her insurance company demonstrates her innocence but she does not attach, specifically identify, or provide a citation to these documents. Petitioner attaches an affidavit from her husband and a handwritten document that appears to detail certain transactions between May 2013 and November 2018. (ECF No. 13-1, ECF No. 13-2, PageID #765–66). But Petitioner has not explained or established that any of this information is newly discovered and was unavailable at the time she entered her plea of guilty.[2] *Cf. Wilson v. Fender*, No. 20-4168, 2021 U.S. App.

---

[2] Notably, post-trial affidavits from family members are not considered sufficiently reliable evidence to support a claim of actual innocence. *Craig v. Coleman*, No. 1:16-cv-1003, 2017 U.S. Dist. LEXIS 153238, at *10 (N.D. Ohio Sep. 18, 2017) (collecting cases); *Kalak v. Berghuis*, No. 2:11-cv-12476, 2015 U.S. Dist. LEXIS 60290, at *20 (E.D.

LEXIS 14039, at *14 (6th Cir. May 11, 2021) ("[The petitioner's] actual-innocence claim is not based on any new evidence, rather it consists of evidence that allegedly existed when the crimes occurred."); *Saylor v. Mack*, 27 F. App'x 321, 323 (6th Cir. 2001) ("However, [the petitioner] has presented no new evidence to support his actual innocence claim. Indeed, the facts underlying his claim were available to him since the time of his guilty plea."); *Wiles v. Warden, Marion Corr. Inst.*, No. 1:14-cv-685, 2015 U.S. Dist. LEXIS 94831, at *19 (S.D. Ohio June 11, 2015) ("[S]uch evidence was not 'new' to the extent that the information contained in the various submissions was known to petitioner at the time he entered his guilty plea."), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 94834 (S.D. Ohio July 21, 2015). Because Petitioner has not presented any new, reliable evidence that was unavailable at the time of her guilty plea to support a claim of actual innocence, she cannot satisfy the demanding standard necessary to warrant excusal of her procedural default.

Because Petitioner has not established either cause for the default or a viable claim for actual innocence, the Court **OVERRULES** Petitioner's objections as to procedural default.

    **C.**    **Objections – Validity of Petitioner's Guilty Plea**

Even though all of Petitioner's claims are procedurally defaulted, the Court will address the merits of Petitioner's objection that she did not waive any constitutional claims because her guilty plea was not knowing and voluntary.

In Grounds Three, Seven, and Eight, Petitioner raises claims for ineffective assistance of counsel based on her appellate counsel failing to raise the following claims on appeal: (i) there was an illegal search and seizure, in violation of the Fourth Amendment (Ground Three); (ii) trial counsel was ineffective for not challenging the dates in the indictment related to the pattern of

---

Mich. May 8, 2015) ("Affidavits from family members that are created after trial are not sufficiently reliable evidence to support a finding of actual innocence.").

corrupt activity charge (Ground Seven); and (iii) trial counsel was ineffective for failing to obtain and subpoena certain documents and records (Ground Eight). (*See* ECF No. 1, PageID #8, 15, 17). All these alleged constitutional deprivations occurred before Petitioner signed a plea agreement, attended a plea hearing, and entered a guilty plea. Magistrate Judge Armstrong concluded that Petitioner waived her claims for ineffective assistance of appellate counsel under Grounds Three, Seven, and Eight because Petitioner's unconditional guilty plea waived the underlying claims, and her appellate counsel was not ineffective for failing to raise waived claims. (ECF No 12, PageID #734–45).

Petitioner argues that her guilty plea was not voluntary because her trial counsel misled her and manipulated her into entering a guilty plea to avoid trial. (ECF No. 13, PageID #757–60). She states that her trial counsel: (i) misrepresented the plea deal, which she thought was for a sentence of community service; (ii) persuaded her not to ask for a continuance; and (iii) did not explain the pattern of corrupt activity charge, so Petitioner did not know what she was pleading guilty to. (*Id.* at PageID #757–58). She also states that she was suffering from depression at the plea hearing and was "unable to read the written plea in court." (*Id.*).

A guilty plea is valid only if it is entered knowingly, voluntarily, and intelligently. *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). A valid guilty plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). Such a plea must also reflect "sufficient awareness of the relevant circumstances and likely consequences" of entering the plea. *Brady*, 397 U.S. at 748. A court must assess the validity of the plea by reviewing the totality of the circumstances surrounding the plea. *Id.* at 749. The State bears the burden of

demonstrating that a defendant's plea was knowing and voluntary, which is generally satisfied "by producing a transcript of the state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

The transcript of Petitioner's plea hearing, provided by the State, reflects that her guilty plea was knowing, voluntary, and intelligent. After Petitioner confirmed that she was choosing to enter a plea as to Counts 1, 5, 9, and 11, the trial court named each charge, stated the maximum fine and term of imprisonment for each charge, and stated the total maximum term of imprisonment (20 years) and potential fine ($50,000) that Petitioner faced. (ECF No. 8-2, PageID #515–16). Petitioner confirmed that she understood the nature of the charges and potential penalties she faced. (*Id.* at PageID #516). Petitioner confirmed that she had read the indictment and the petition to enter the guilty plea, she understood both documents, her trial attorney had answered her questions, and she did not have any further questions. (*Id.* at PageID #517–18). She confirmed that she understood a guilty plea was an admission of guilt and entering a guilty plea would waive certain constitutional rights. (*Id.* at PageID #519). The trial court read the constitutional rights that Petitioner would waive with a guilty plea, and Petitioner confirmed that she waived those rights and freely elected to have the trial court accept her guilty plea. (*Id.* at PageID #519–21).

After the prosecution stated the facts of the case and listed each charge against Petitioner, Petitioner confirmed that she was pleading guilty to Counts 1, 5, 9, and 11. (*Id.* at PageID #520–23). After confirming that she had discussed the plea, charges, and evidence with her trial counsel, Petitioner stated that she was satisfied with the advice she received from her attorney. (*Id.* at PageID #523–24). Petitioner confirmed that she was entering a guilty plea freely and voluntarily. (*Id.* at PageID #525). The trial court again stated the possible maximum sentence and fines that Petitioner faced, and Petitioner again confirmed that she understood. (*Id.* at PageID

#525–26). Petitioner confirmed that she had not been induced to enter a guilty plea by threats or promises, and she understood that the trial court was solely in control of what sentence she might receive. (*Id.* at PageID #527–28). Petitioner informed the trial court that she was experiencing certain physical issues but stated that her mental health was okay, she was thinking clearly, and she understood what was being discussed at the plea hearing. (*Id.* at PageID #528–29).

Finally, Petitioner entered a guilty plea, and the trial court found that this plea was "freely, voluntarily, and understandingly made"; the court further stated, "let the record show that the defendant has withdrawn the defendant's plea of not guilty and entered a plea of guilty this day in open court and the Court does find you guilty as charged in Counts 1, 5, 9, and 11 of the indictment." (*Id.* at PageID #529–30). "The factual findings of a state court that the plea was proper generally are accorded a presumption of correctness. However, when the transcript is inadequate to show that a plea was voluntary and intelligent, the presumption of correctness no longer applies." *Garcia*, 991 F.2d at 326–27 (internal citations omitted). There is nothing in the plea hearing transcript that undermines the trial court's finding that Petitioner's guilty plea was knowing, voluntary, and intelligent.

The transcript also demonstrates that Petitioner fully understood the relevant circumstances and direct consequences of a guilty plea, and that she made an intelligent and knowing decision among alternative courses of action. *See Alford*, 400 U.S. at 31; *Brady*, 397 U.S. at 748. The trial court informed Petitioner of the specific charges she was pleading guilty to and the potential penalties she faced multiple times. Petitioner confirmed that she understood and also stated that she was freely and voluntarily entering a guilty plea. "A defendant's statements on the record during a plea colloquy that he understands the nature and the consequences of the plea provide strong evidence that a plea was intelligent and knowing." *Tiran v. McQuiggin*, No. 11-1850, 2012

14

U.S. App. LEXIS 27464, at *5–6 (6th Cir. July 18, 2012). Although Petitioner now argues that she was misled by her trial counsel promising her that she would likely receive probation as a sentence, the Court agrees with Magistrate Judge Armstrong's conclusion that:

> "[u]nfulfilled subjective expectations of counsel and a defendant regarding the possible length of sentence do not render an otherwise valid plea involuntary." *United States v. Ford*, 15 F. App'x 303, 308 (6th Cir. 2001); *see also Lee v. United States*, No. 2:12-cv-327, 2013 WL 3724876, at *18 (S.D. Ohio Jul 15, 2013) (holding that plea was not involuntary despite counsel's inaccurate prediction regarding sentence length), *report and recommendation adopted*, 2013 WL 2090580 (S.D. Ohio May 19, 2014).

(ECF No. 12, PageID #731).

Petitioner testified at the plea colloquy that she was not induced to enter a guilty plea by any promises or threats, (ECF No. 8-2, PageID #527), and that she understood her sentence was at the sole discretion of the trial court, (*id.* at PageID #527–28). Petitioner is bound by these statements. *See United States v. Todaro*, 982 F.2d 1026 (6th Cir. 1993). Moreover, her sworn statements before the trial court during her change of plea hearing are entitled to a strong presumption of truth, and Petitioner has presented insufficient evidence to overcome that presumption. *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). Petitioner's Petition to Enter a Guilty Plea also stated that Petitioner knew she faced up to 20 years imprisonment and understood the agreement between her and the State was simply that she would plead guilty to Counts 1, 5, 9, and 11, and the State would dismiss Counts 2, 3, 4, 6, 7, 8, and 10. (ECF No. 8-1, PageID #187). Reviewing the record and Petitioner's objection, the Court finds that there was no error in Magistrate Judge Armstrong's conclusion that Petitioner waived the constitutional claims underlying Grounds Three, Seven, and Eight because she had entered a valid, unconditional guilty plea.

Accordingly, Petitioner's objections about the validity of her guilty plea are **OVERRULED**.

IV.     **CERTIFICATE OF APPEALABILITY**

Title 28 U.S.C. § 2253 requires the Court to determine whether to grant a certificate of appealability for a claim presented in the Petition.  The relevant subsection of § 2253 states:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

To make a substantial showing, Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  If a district court dismisses constitutional claims on the merits, "petitioner must demonstrate only that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Petkovic v. Clipper*, No. 1:14-cv-02292, 2016 U.S. Dist. LEXIS 94535, 2016 WL 3950083, at *2 (N.D. Ohio, July 19, 2016).  Based on the record and relevant law, a reasonable jurist could not find this Court's assessment of Petitioner's constitutional claims debatable or wrong.  Therefore, no certificate of appealability will issue from this ruling.

16

## V. CONCLUSION

For the foregoing reasons, Petitioner's objections (ECF No. 13) are **OVERRULED**. The Court **ADOPTS** Magistrate Judge Armstrong's R&R (ECF No. 12) and incorporates it fully herein by reference. The Petition is hereby **DENIED** and **DISMISSED**. The Court **CERTIFIES**, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision cannot be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c).

**IT IS SO ORDERED.**

Date: March 31, 2025

_____
**CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**